CATHRYN GAVIN, Plaintiff, *v.* EUGENE MALHERBE and JOSEPH SCHWASNICK, JR., Defendants.

CATHRYN GAVIN, as Administratrix, etc., Plaintiff, *v.* EUGENE MALHERBE and JOSEPH SCHWASNICK, JR., Defendants.

Supreme Court, Kings County, December, 1932.

*Louis Lazarus* [*Moses Kaplan* of counsel], for the plaintiff. ·

*William Butler* [*J. A. Keller* of counsel], for the defendant Schwasnick.

MAY, J.   There are presented here three motions addressed to two actions.   One action is by the plaintiff for injuries sustained by herself and certain of her minor children in an automobile collision.   The other action is by the plaintiff, as administratrix of her son, who was killed in that collision.   Two of the motions are by the defendant Schwasnick, who seeks judgment on the pleadings in both actions, the basis of the motions being his contention that the actions were released.   The third motion is by the plaintiff, in her own action, for a separate trial of the issue of release.

The automobile accident occurred in the State of Pennsylvania when a car owned by the defendant Malherbe and driven by the defendant Schwasnick, collided with a car in which the plaintiff and her said children were passengers.

The plaintiff, Cathryn Gavin, commenced two actions, as aforesaid, each against Malherbe and Schwasnick.   In the original complaints it was alleged that Malherbe was the owner of the automobile and Schwasnick the driver, and that Schwasnick was in the employ of Malherbe.   Later, and before amended complaints were served, the plaintiff, acting in her individual and in her representative capacities, executed a series of general releases under seal to Malherbe without any reservations.   The amended com-

plaints still join both defendants, but without appropriate allegations to set up the doctrine of *respondeat superior*. Damages are sought in these actions against the defendant Schwasnick alone.

It is evident that the defendant Malherbe could not be held in any event in the present actions, as the applicable statutory. law of Pennsylvania, if any there be, is not pleaded by either party. Our courts do not take judicial notice of the statutory law of other States. Such statutes, if any exist, must be determined as facts upon proper pleadings and proof, and evidence as to a foreign statute is not admissible unless this statute be pleaded. In the absence of a Pennsylvania statute duly pleaded and proved, which alters the common law, the presumption is that the common law prevails in that State. (*Van Wyck* v. *Realty Traders, Inc.*, 215 App. Div. 254.) In the absence of proof to the contrary, the presumption is that the common law of another State is the same as our common law. (*Ohl & Co.* v. *Standard Steel Sections, Inc.*, 179 App. Div. 637.) It follows from the rules above stated that the rights and liabilities of the parties in these actions are governed by the Pennsylvania common law, which is presumed to be the same as ours. Thus, section 59 of the Vehicle and Traffic Law is eliminated from consideration in determining the issues herein involved. The reason is that no Pennsylvania statute similar to section 59 is pleaded and proved. The doctrine of *respondeat superior* is not invoked in the amended pleadings which, on the contrary, assert that the defendant Schwasnick was driving and operating the car for his own pleasure and/or uses and not on any business of nor pursuant to employment with the said Malherbe. Under the common law of this State, which governs the liability of the defendant Malherbe, an owner of a motor vehicle loaned to another is not liable for personal injuries or property damage occasioned by the negligence of the borrower while using the car solely for his own purposes. (*Van Blaricom* v. *Dodgson*, 220 N. Y. 111.)

So much for the present pleadings. The difficulty with the plaintiff's position is that the allegations, as above set forth, were entirely different in the original complaints, where the relation of master and servant was set forth as between the defendant Schwasnick and the defendant Malherbe, and the doctrine of *respondeat superior* was invoked.

The general releases under seal were given by plaintiff in her individual and representative capacity to the defendant Malherbe prior to the service of any amended complaints, contain no reservations whatsoever and recite considerations amounting in the aggregate to $3,950.

The moving defendant now claims that these releases inured

to his benefit, invoking the well-known legal doctrine that a release to one or more joint tort feasors without reservation as to the others, releases all. The plaintiff meets this contention with the assertion that even under the theory of *respondeat superior* the defendants Schwasnick and Malherbe were not joint tort feasors under the above doctrine. The contention of the plaintiff in this respect appears to be sound under the decisions of our higher courts. (*Fedden* v. *Brooklyn, etc., Terminal,* 204 App. Div. 741; *Frascone* v. *Louderbeck,* 153 id. 199.)

Although not joint tort feasors under the doctrine of the foregoing authorities in the sense that the master was an active participant in the negligent or wrongful act, it is likewise true that the doctrine of *respondeat superior* puts the master and servant in such close legal relationship as to intimately affect each other in dealings with third parties. The tort committed by the servant is the same tort for which the master is liable under the doctrine of imputed negligence. Damages recovered for such a tort are entire and not severable. The servant is liable to his master for damages which the master has been compelled to pay to third persons because of the negligent or other wrongful act of the servant, where the master is not himself at fault. (26 Cyc. 1545.) For the above reasons it has been held that, despite the fact the master and servant are not joint tort feasors, a release to one discharges the other. If that were not the case we might have a situation where a party would settle with the master, then sue and recover against the servant, who would then be liable in a suit brought against him by the master, thus forcing him to pay twice for the one wrong.

The difficulty with the contention of the plaintiff, as I see it, is that at the time she executed the releases for a substantial consideration she had taken the position that these defendants were joined in legal theory and it does not now lie in her mouth to say otherwise. In the case of *Casey* v. *Auburn* (155 App. Div. 66) the plaintiff sued the city of Auburn and thereafter settled with that defendant, giving a release without reservation. The plaintiff then brought suit against the Auburn Telephone Company, which set up the release given to the city of Auburn as one of its defenses. It was contended that the city was not, in fact, liable, but the court nevertheless held that the defense was good and that the plaintiff was estopped after the acceptance of a consideration and the giving of a release from asserting the non-liability of the city. The decision cited with approval the language of *Hubbard* v. *St. Louis & M. R. R. Co.* (173 Mo. 249), to the effect: "It does not lie in the mouth of such a plaintiff to say he had no cause of action

against the one who paid him for his injuries, for the law presumes that the one who paid committed the trespass and occasioned the whole injury."

The court also cited, with approval, the language of *Brown* v. *City of Cambridge* (85 Mass. 474), to the effect: " It is an ancient doctrine that a release to one joint trespasser or a satisfaction from him discharges the whole. * * * The same doctrine applies to all joint torts and to torts for which the injured party has an election to sue one or more parties severally. Where, for example, a master is liable for the tort of his servant, a satisfaction from one discharges both, though they cannot be sued jointly. If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages. He might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage as if nothing had been paid by the others. A door would thus be opened for a class of speculations that do not deserve encouragement. The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason. The plaintiff is estopped to say that he had no claim against the Water Works for the tort, but compelled them to buy their peace by the settlement of a claim that was groundless and therefore malicious; for this would be an allegation of his own wrongful act. He is to be regarded as having prosecuted his claim against them in good faith, and they admitted its validity so far as to compromise it."

The attention of the court has been called to the recent decision in the Appellate Division, First Department, in the case of *Landau* v. *Hertz* (237 App. Div. 141). The facts are clearly dissimiliar and do not affect the argument herein stated.

The motions of the defendant Schwasnick will be granted.

As to the motion of the plaintiff for a separate trial of the issue of the releases given, there is no dispute as to the giving of the releases and the facts are conceded. Inasmuch as the only question is one of law, which question has been resolved in the decision on the companion motions, plaintiff's motion is denied.

The motions of the defendant to dismiss the complaints were based upon the amended complaints, the amended answers and the replies thereto, which motions were made returnable on the same day as the application of the plaintiff for a separate trial of the issue involving the matter of the giving of the releases herein. In order to pass intelligently upon the plaintiff's motion, it became necessary to ascertain the facts and circumstances attending the giving of such releases. There was then presented to me, and

the facts are not in dispute, the circumstance that the releases were given subsequent to the service of the original complaints and prior to the service of the amended complaints, and such original complaints and the time of procuring the releases became important in the consideration of the plaintiff's motion, and such facts were taken into account in the consideration of the defendant's motions to dismiss the complaints.